W. H. H. CHAPMAN, plaintiff in error, vs. WM. T. WOODRUFF, defendant in error.

[1.] Section 3958, of the code relates only to *certiorari* sued out to correct errors in the Inferior Courts, *proper*, sitting twice in each year as Courts of law, and in Courts of Ordinary, of the several counties.

[2.] Writs of *certiorari* sued out to correct errors by the *Justices* of the Inferior Court of any county, trying *habeas corpus* cases, are regulated by § 3960 of the code.

Motion to dismiss *certiorari* in Taliaferro Superior Court. Decided by Judge REESE. August Term, 1864.

On the application of the plaintiff in error, Chapman, a writ of *habeas corpus* was issued by one of the Justices of the Inferior Court of Taliaferro county, on the 23d of February 1864, directed to Woodruff, who, as sub-enrolling officer of that county, held Chapman in custody for military service in the army of the Confederate States. The writ was made returnable on the 26th of the same month, at the court house, and before the Justice who issued it. At the return, the case was heard at chambers, before the whole bench of Justices, (five in number,) of the Inferior Court of Taliaferro county, by whom a unanimous judgment was rendered, discharging Chapman, the relator, from custody. Upon this judgment *certiorari* was brought by Woodruff to the Superior Court, in the mode pointed out by § 3960 of the code of Georgia: that is, by petitioning that *Court*, plainly and distinctly setting forth the errors complained of, filing the petition, together with the requisite bond, with the Clerk, and procuring the Clerk, thereupon, to issue the writ of *certiorari*, directed to the *Justices*, whose judgment was the subject-matter of complaint.

At the term of the Superior Court to which the *certiorari* was returnable, counsel for Chapman moved to dismiss the same, on the ground that it should have been brought in the mode prescribed by § 3958 of the code; that is, (after excepting, in writing, to the decision pronounced below,) by petitioning the *Judge* of the Superior Court, and having

*him*, if compatible with his discretion, to issue the writ of *certiorari*, directed to the *Clerk* of the Inferior Court, etc. The specific legal question underlying this motion, was, whether the *habeas corpus* was a cause in the "Inferior Court" of Taliaferro county, or whether it was in an "Inferior Judicatory, or before persons exercising judicial powers," within the true sense and meaning of the code.

His Honor, Judge REESE, held, that it was not to be considered as in an Inferior Court, proper, but as in one of the other jurisdictions mentioned, and so refused to dismiss the *certiorari*. This refusal is the error alleged in the present bill of exceptions.

BRISTOW, represented by POTTLE and TOOMBS, for plaintiff in error.

HULL, represented by BLECKLEY, for defendant.

*By the Court.*—JENKINS, J. delivering the opinion.

The case in the Court below was a *certiorari* sued out in the county of Taliaferro, for the purpose of reviewing a judgment rendered by the Justices of the Inferior Court of that county, upon a return to a writ of *habeas corpus* issued by one of them.

Section 3958 of the code prescribes the method in which a writ of *certiorari* shall be obtained, for the correction of any error alleged to have been committed "by *any Inferior Court, or. Court of Ordinary.*" Section 3960 prescribes a different method for obtaining the same writ, for the correction of an alleged error committed in any cause, "*in a Justices Court, Corporation Court, Council, or any Inferior Judicatory, or before any person exercising judicial powers.*" The method prescribed in the latter section was adopted in this case, and when called for trial in the court below, a motion was made to dismiss the *certiorari*, on the ground

that it should have been sued out, not under section 3960, but under section 3958.

This presents the question, whether the triors of the *habeas corpus* case were the Inferior Court of Taliaferro county, or whether they constituted any one of the tribunals specified in section 3960.

[1.] We may remark, that, as a general rule, when that County Court which has concurrent jurisdiction with the Superior Court, except in equity causes, and causes involving title to real estate, or that quasi corporation controlling county affairs, is referred to, in our legislation, it is designated as "*The Inferior Court*," or "*any Inferior Court*," meaning the Inferior Court of any county. But where extra powers are conferred, or duties imposed, upon the persons constituting these Courts, or upon any one of them, the phraseology usually employed is, "*a Justice*," or "*one or more Justices of the Inferior Court*." The latter terms would seem to be only descriptive of the officers of the State, in each county, who shall be authorized to exercise the powers, or to perform the duties in question. A striking instance of this, bearing directly upon the question under consideration, occurs in three consecutive sections of the new code. Article 1st, chap. 4th, is entitled "The Inferior Court, and *its Justices*." We are thus pre-monished, that some of the sections embraced in this article have reference to County Courts, proper, and others to the Justices who, in association, constitute these Courts. Accordingly, we find that section 285, commencing with the words, "*The Inferior Courts* have authority to tax," proceeds, under five heads, to enumerate powers appropriate to a court of law. Section 286, commencing, "To exercise original and exclusive jurisdiction, when sitting for county purposes, over the following subject-matters, viz:" proceeds under nine heads to confer powers appropriate to a county corporation.

Then follows section 287, which, commencing thus, "*The Justices* of the Inferior Court have authority," etc., confers powers not embraced in either of the other sections, some of

which one alone may perform, whilst others require the concurrence of two or more; some of which are only initiatory of other proceedings, whilst others are fully ended and performed by the act designated. And of those only initiatory, some are required to be returned to a court of law, for further prosecution, (as in attachment,) whilst others are to be, by the Justice, himself, carried through the subsequent proceedings, (as in possessory warrants); and of those required to be returned to a regular term of a court of law, for further prosecution, some are required to be returned to the Superior Court, others to the Inferior Court, and still others to a Justices Court. When we add to this view the consideration that any one Justice may issue a writ of *habeas corpus*, whilst by section 281 of the code, it is provided, that " not less than three of such Justices can hold a Court," it is clearly established, that in the *issuing* of the writ, the Justice is not exercising the jurisdiction of that Court of which he is one of the commissioned Judges, but simply performs the duty of a magistrate, enjoined by statute. If not, then, in its inception, a proceeding in the Inferior Court, when does it become so, or how does it get into that Court?

Let us trace the proceeding in its legal course: Section 3921 provides, that " If the writ be issued by a Justice of the Inferior Court, the return shall be heard by at least a majority of the Justices of such Court." It is not that the return shall be made to, or heard by the Inferior Court. The same distinctive phrase, used in section 287, " Justices of the Inferior Court," is employed here. That section confers upon Justices of the Inferior Court, among others, the power of issuing both writs of attachment, and writs of *habeas corpus*. We have seen what after-proceedings are to be had, under the latter. We will now look to the course directed in the former. The comparison will prove instructive. By section 3194, it is provided, that when the amount sworn to exceeds the sum of fifty dollars, the attachment shall be made returnable to the next term of the Superior or Inferior Court, (not being

within twenty days of the time of issuing it ;) and if the sum sworn to shall not exceed fifty dollars, then to the next Justices Court of the district.    Of course the court, to whose regular term it is thus returned, then acquires jurisdiction, as a regularly constituted and permanent court of law. Hence, it appears, further, that the question of jurisdiction as between these courts, does not depend, in the case of attachment, upon the relation existing between any one of them and the officer issuing the writ.    The law determines it by other circumstances.    But why this difference between the two writs in the matter of return ?    Why is the attachment always made returnable to a regular term of some established court, and the *habeas corpus* always to the officer issuing it, to be heard by him alone, or by him and others specified, without reference to courts, or their terms ?    Because, in the former case, the emergency is satisfied by the execution of the writ, and thenceforth the ordinary course of proce- dure in courts of law, having their periodical sessions, is ad- equate to the ends of justice.    It is a simple question of in- debtedness.    Not so with the writ of *habeas corpus*.    The emergency requires not only its immediate service, but speedy decision of the merits of the case.    It is a question of personal liberty.    Again, the Inferior Court is not al- ways open.    By section 3162, it is enacted, that " the Infe- rior Courts of this State shall be held twice in every year, in each county thereof, by the Justices of the said Court, or a majority of them, at the times hereinafter mentioned." Then follows a tabular statement of the times appointed for its session, in each county.    Sections 3168 and 3169 pro- vide for a failure of a majority of the Justices, or of all of them, to attend, at the time appointed, and for adjournments in term time.    They contemplate either a postponement, under specified contingencies, and by special procedure, of the regular session, or its intermitting continuance.    From these three sections two results inevitably follow : 1st, That, except as qualified by section 3168, there can be no session of the Inferior Court, unless it be commenced at one of the

two times fixed by law, for the county to which it appertains. 2dly, That a session once terminated, that Court remains closed, until the time specified in the law for its next session. And we know, that to this view the practice of that Court corresponds. If it be necessary to add any thing to this point, reference may be had to the 4th specification under section 287, in these words: "The Justices of the Inferior Court have authority to sit at any time, *as a Court for county purposes*, and for the exercise of any power they possess, *as a quasi corporation, contradistinguished from their power as a Court.*" This clearly negatives the idea, that "*their power as a Court*" *may be exercised at any time.* But, section 3914 requires that "the return day of such writ (of *habeas corpus*) shall always be within twenty days after the presentation of the petition therefor." Since there are but two sessions of the Court in a year, any coincidence between the return day of the writ and the session of the Court, would be purely accidental, and the Legislature cannot be presumed to intend that the execution of its mandates shall depend upon accident. In all other cases, a hearing in the Inferior Court, upon return of the writ, would be a legal impossibility. Hence, we conclude, that the Court designated in section 3921, is not the Inferior Court, proper, but a special judicatory, constituted for the particular class of cases referred to. Section 3958, therefore, is inapplicable to *habeas corpus* Courts, unless the terms "any Inferior Conrt" be held to include all Courts inferior to the Superior Court. If so, section 3960 would not only be unnecessary, but would be in conflict with section 3958, at least, as regards the tribunals therein mentioned which may be called Courts, as "Justices Courts, Corporation Courts, and Councils." The word "*any*," which is held to extend the operation of the section to all Courts inferior to the Superior Court, we apprehend, has in this connection, a different and more restricted signification. If it had the more extended meaning insisted upon, it would have been unnecessary to mention, specially, the "Court of Ordinary," for that, without specification,

would fall within this broad description, "any inferior Court." And here applies the maxim, "*expressio unius, exclusio est alterius.*" We find two expressed, the "Court of Ordinary," (and there is a Court so named in law,) and "the Inferior Court," that being the legal style of another Court. By grammatical construction, the term "*any*" applies as well in this section to "Court of Ordinary" as to "Inferior Court." The true reading is, "any Inferior Court or any Court of Ordinary." Thus read, the meaning would be, "the Inferior Court, or Court of Ordinary of any county;" there being a separate Court of each description for every county. In the case of *The Mayor and City Council of Macon vs. Shaw*, 16th *Ga.* 172, this Court decided, "That our judiciary act of 1799," (the provisions of which relating to *certiorari*, are the same as those of the 3958th section of the code, except that Courts of Ordinary are embraced in the latter,) "refers only to the writ of *certiorari*, as issuing to the Inferior Court, *proper*, (meaning our County Court, composed of five Justices,) and the twenty days notice required, by that act, to be given, has application to that Court only." We hold, then, that *certiorari* to the *habeas corpus* Court, which sat in Taliaferro county, could not be sued out under section 3958, because it was neither the Inferior Court nor the Court of Ordinary of any county, to which Courts, alone, that section applies.

[2.] Was the proceeding under section 3960 proper? We think it was. The causes mentioned therein which may be reviewed by *certiorari*, in the manner prescribed, are those pending in "a Justices Court, Corporation Court, Council, or any inferior judicatory, or before any person exercising judicial powers." We think triors of *habeas corpus* cases must be included either in the descriptive terms "inferior judicatory," or in those others, "persons exercising judicial powers." It seems to have been the intention of the Legislature to subject every primary judgment pronounced under legal authority, affecting private rights, to review; and broader, more comprehensive language could scarcely be

employed. Can there be a judgment pronounced, which, unreversed, the citizen is bound to obey, and which yet emanates from no Court, no judicatory, no person or persons exercising judicial powers? We apprehend not. In the case of *Livingston vs. Livingston*, 24*th Ga.* 379, this Court held, that *habeas corpus* Courts were, in the sense of the Constitution, "inferior *judicatories*," and their proceedings subject to review by *certiorari.* Then there was no provision of law to carry into effect that clause of the Constitution, except as related to "The Inferior Court" proper. The code has supplied that defect. It is argued that the designation, "inferior judicatory," as used in the code, applies only to *judicatories* inferior to Justices Courts first named in the section. Why not suppose it used in the sense of the 7th clause, 2d section, fourth article of the Constitution, and introduced to embrace all *judicatories* inferior to the Superior Court, and not previously specified in this section of the code, or in section 3958? But exclude from consideration this specification, and we ask, if the persons legally trying a *habeas corpus* case be not an inferior judicatory—if they be no *Court* at all—is there any escape from the conclusion, that they are "persons exercising judicial power?" That is an independent designation.

The rule of construction, that where, in an act of the Legislature touching Courts, one Court is named, and the words "and other Courts" follow, those words must be taken as applying to Courts inferior to that named, is not without exceptions. In *Dwarris*, on statutes 758, we read, "but in the statute of *Marlbridge, Cap.* 19th, a provision is made " touching essoigns in counties and hundreds, or in courts baron, or in other courts; and here, although the act beginneth with inferior Courts, contrary to rules (as is known by common experience) the general words, *vel in aliis curiis*, are interpreted to extend to the King's Courts of record, in Westminster, and other Courts of record. And the cause is, for that otherwise, these general words, should be void; for it cannot, according to the general rule, extend to inferior Courts, for

none be more inferior, or lower, than these that be particularly named; and so, *note* a just exception out of the general rule."

Our opinion is with the Court below, whose judgment is affirmed.